Moncure, P.,
after stating the case, proceeded:
The demurrer to the bill was not expressly sustained or overruled. But it was impliedly overruled by the decree which was made in the cause, without taking any notice of the demurrer. I think it was properly overruled. There are allegations in the bill, which, if conceded to be true, entitle the plaintiff to relief, and the demurrer concedes. them to be true, for the purpose of the question it propounds to the court, whether they can entitle the plaintiff to any relief ?
These allegations are, 1st. That the plaintiff is entitled to other credits on the second bond, over and above the sum of $34 44, overpaid on the first bond, *253 as follows, to wit: “ 8 bushels of seed oats, 8 barrels of Irish seed potatoes, a lot of lumber, and other articles, which the said Duke promised to credit on the said - second bond, but has failed to do so;” 2dly. That the' plaintiff, having fully paid off and discharged the first bond, is entitled to the possession of the same, but the said Duke refuses to deliver it to him; and, 3dly. That the object of the said Duke, in now again, for the fourth time, attempting to sell the said land, under the said deed of trust, “ is because, at the depreciated value of land in this State, the said property can be bought in by the said Duke, or by some of his friends, at a price which will be utterly inadequate to its value, and that he or they will purchase the same for about one-third of its value.”
In regard to the first of these allegations, there can be no doubt but that it is improper in a trustee to make a sale under a deed of trust, executed to secure the payment of a debt, so long as it remains uncertain what amount is due on account of said debt. And if it be uncertain what is the amount of the debt due, or what is the amount of credits properly applicable thereto, but not so applied, it is the duty of the trustee, before making the sale, to ascertain the amount to be raised by the sale, and to bring a suit in chancery to procure a settlement, by a commissioner for that purpose, if necessary. Or, if the trustee be about to make the sale, without performing that duty, the debtor may himself bring a suit in chancery for such a settlement, and in the meantime to enjoin the sale.
The bill does not allege a refusal or failure, on the part of the creditor, to give any other proper credit on the bonds, than the credit here claimed for seed oats, potatoes, lumber, and other articles: and, in regard to this credit, the claim asserted in the bill is very vague. There is no account of the items of the claim filed with the bill, and none of those items are set out in the- *254 bill, but 8 bushels of seed oats, and 3 barrels of Irish seed potatoes. The remaining subject of the claim is, - “ a lot of lumber and other articles.” If we are to judge of the amount or value of the lumber and other articles, here referred to, from the quantity and character of the items specified, the whole claim appears to be comparatively small. The bill does not allege any attempt by the plaintiff to have a settlement of these matters with Duke, or any refusal of Duke to settle them. On the contrary, it alleges that he promised to credit them, but has failed to do so. Non constat, that he was not willing to credit them, and did not intend to credit them, when the balance due on the bonds was ready to be settled, either by the debtor or out of the proceeds of the trust sale of his property. The presumption is, that TIogan knew the amount of the credit which he claimed, and could easily ascertain the balance which he owed, and, if he wished to prevent the sale, he had only to tender the amount of that balance to Duke. But he made no such tender. And it is really difficult to perceive any just ground of complaint on this score that he has. His complaint seems to be narrowed down to this: that Duke promised to credit the amount due for the oats, potatoes,lumber and other articles on the second bond, but failed to do so. Such is the allegation of the bill, and, if it makes out any case- at all for equitable relief by injunction, it barely does so. And now let us see how the answer treats this allegation.
Duke, in his answer, says: “ It is not true that the complainant is entitled to a credit upon the said second bond for the price of the ‘ eight bushels of seed oats, three bushels of Irish seed potatoes, a lot of lumber, and other articles,’ as stated in his said bill; nor is it true that this respondent ever promised to credit the said bond therefor. This claim was asserted by the complainant in another suit between these parties, *255 hereinafter alluded to, and still pending in this court, and was disallowed, there being no evidence to sustain it. In fact, the complainant is indebted to respondent ■ on other accounts than on account of said bonds, to wit: for groceries, wood, &c., to an amount equal, within a few dollars, to the amount due him for the lumber, potatoes and oats. These small accounts between them were utterly independent of the transactions for the land, and were never understood by either party to have any connection with said bonds.”
Here, then, is a positive denial in the answer of the -only material allegations of the bill on this subject, and there is not a particle of proof in the record to sustain these allegations, or either of them.
2dly. In regard to the allegation of the bill, that Duke refused to deliver to Hogan the first bond, which has been duly discharged, Duke, in his answer, says : “ It is not true that this respondent ever refused to deliver to said complainant the first bond; for, as before stated, he has never been able to get the said Hogan to ■a settlement, nor has said Hogan ever asked him for ■said bond.” There is not a particle of proof in the record to sustain the allegation of the bill on this subject.
3dly and lastly. In regard to the allegation of the bill that it is the complainant’s object to have the land sold at a sacrifice, that he or some of his friends may purchase it at about one-third of its value; Duke, in his answer, says, he “ denies that he has attempted to ■sell the said land under said deed of trust with any view of buying it himself. His real and only purpose is to get his money due him by said Hogan on said bonds, of which he has stood, and now stands, sorely in need.” There is no proof in the record to sustain the -allegation of the bill on this subject.
In regard to the small sum of four dollars, which the ■evidence introduced by Hogan shows was assumed to *256 be paid him by Duke for Bridgwater, it is outside of tbe pleadings in tbe cause, and there is no evidence to. ■ show that it was agreed by Duke to credit it on the bond of Hogan.
Such being tbe pleadings and tbe proofs in regard to tbe only grounds of equitable relief relied on in tbe bill, when tbe cause came on to be beard on tbe bill, answer, exhibits and proofs, tbe court might, with propriety, have wholly dissolved tbe injunction and dismissed tbe bill: and this court could not have said, on an appeal from such a decree, that it was erroneous.
Instead of doing so, however, the Circuit court only dissolved tbe injunction so far as it conflicted with tbe provisions of tbe decree, which the court proceeded to make for tbe sale of tbe property and disposition of tbe proceeds of sale; in other words, for tbe execution of tbe trusts of tbe deed, under tbe superintendence and by tbe direction of tbe court.
It was perfectly competent for tbe court to pursue this alternative course; and it seemed to be proper in this case to do so, for tbe reason, if no other, that it appeared from tbe evidence that tbe trustee named in tbe deed was “not a responsible man, having lately-taken tbe benefit of tbe bankrupt law.” Certainly it was. for tbe benefit of Hogan that tbe court should pursue .this course, and be has no cause to complain of it unless there be something objectionable in tbe details of tbe decree. And now let us see whether such is tbe case or not.
Tbe decree directs tbe trustee named in tbe deed, after having first given bond with approved security before tbe clerk of tbe court in tbe penalty of two thousand, dollars, payable and conditioned according to law, to. make sale of tbe real estate specified in said deed. Thus far there can be nothing objectionable, and there is no objection to this part of tbe decree. It was proper that tbe trustee selected by both parties should *257 execute the trust; provided-he would give security, which, his having become a bankrupt, made necessary, and provided the trust was executed under the supervision of the court.
The decree then directs the sale to be made, “after advertisement according to” the terms of the deed, “for cash as to so much as may he necessary to defray the usual costs and expenses of said sale (including the legal commissions of the trustee, and the usual charges of an auctioneer to make said sale, and the cost of advertising this sale and a former sale which was enjoined in this court and the injunction subsequently dissolved), and also a fee, not exceeding ten dollars, for preparing a deed to the purchaser of said real estate, and the costs of stamping the same, and to pay the amount claimed to he due to the said Duke, on account of the bonds specified in said deed of trust, after deducting therefrom the various credits specified in the advertisement for the sale of said property which was arrested by said injunction; an extract of which advei’tisement is filed as an exhibit with the bill.”
I can see nothing objectionable in this part of the decree. The advertisement should of course be according to the terms of the deed; and according to those terms it was proper to require so much of the purchase money to be paid in cash as might “be necessary to satisfy the costs and expenses of sale, and to pay so much as might then he due on said bonds, or either of them.” This is all which this part of the decree requires. It is objected that the “costs and expenses of said sale” are to include, among other things, “the usual charges of an auctioneer to make said sale, and the cost of advertising,” not only the sale directed by the decree, hut “a former sale which was enjoined in this court and the injunction subsequently dissolved.”
It is said that the charges of the autioneer ought to be paid by the trustee out of his own commission, *258 which is allowed him for selling the property and other services in executing the trust; and if he chooses to employ an auctioneer to make the sale for him, the expense thus incurred is on his own account. The compensation allowed by law to a trustee is for his usual and proper services. A trustee who makes a sale generally employs somebody to cry the sale, and a reasonable charge for that service has always been allowed as a part of the expenses of executing the trust. An auctioneer in a city has facilities for making a sale which others have not, and more is generally realized to the owner of the property by employing an auctioneer to sell it, than the amount of the usual charge for doing so. I believe the invariable practice has been to allow the usual and reasonable charge of an auctioneer in such cases, as part of the expenses of executing the trust. The service of the auctioneer not being considered as embraced in the usual and proper services of the trustee for which his legal commission is allowed him. Of course the court will take care not to make an unreasonable allowance on account of the service of the auctioneer. The amount to be allowed is not fixed by the decree. The cost of advertising the sale under the decree is a proper charge; and so also is the cost of advertising a former sale which was enjoined and the injunction subsequently dissolved. Besides the costs and expenses of sale, which are all specially enumerated and seem to be unobjectionable, the cash payment of the proceeds of sale is required to be sufficient “to pay the amount claimed to be due to the said Duke on account of the bonds specified in said deed, after deducting therefrom the various credits specified in the advertisement for the sale of said property which was arrested by said injunction; an extract of which advertisement is filed as an exhibit with the bill.” These credits thus specified were $800 on the 2'3rd of March, 1867, $150 on the 23rd of April, 1867, and $150 *259 on the 23rcl of May, 1867, being all tbe credits claimed by Hogan, except the credit claimed for oats, potatoes, ■lumber and other articles, which credit was denied by "the answer and not sustained by any evidence as aforesaid. And the amount of the two bonds subject only to these credits specified in the advertisement being the amount then due on account of the trust debt according to the pleadings and proofs in the cause, it was required by the terms of the deed of trust that that amount should be provided for in the cash payment to be made by the purchaser at the sale. There was no uncertainty as to the amount of the cash payment to be so made. It could be made certain by a simple ■statement from materials furnished by the decree. Still less was there any uncertainty as to the amount necessary to be paid to prevent any sale at all under the trust deed or under the decree. That amount was the balance due on the trust debt, and the expenses already incurred in the part execution of the trust. 'The debtor Hogan had a right to pay that amount and ■prevent a sale at any time before it was made, and thus avoid any further expense. The decree did not expressly recognize this right, but that was unnecessary, as the right clearly existed, independently of the decree. The debtor made no tender of the debt or offer to pay it.
As to the residue of the said proceeds of sale, the •decree directs that “the same shall be made upon such terms as the said Hogan may prescribe; and in default ■of such direction, the said trustee, or other person exe•cuting the decree, may think just and reasonable; all such credit payments to be properly secured by a lien -on said property.” This part of the decree is in strict ■conformity with the deed, .and no objection is made to it.
“ Out of the cash payment” the decree provides that *“the said trustee, or other person executing the decree, *260 shall he authorized to pay the said commissioner’s and usual auctioneer’s and advertising charges above named, and the said charges for preparing and stamping the deed to the purchaser, and also to pay to the said Duke the sum of nine hundred dollars, on account of the amount claimed by him to be due on the bonds secured by said deed, it-appearing manifest to the court that he is certainly entitled to receive at least that sum on account thereof. The residue of said cash payment the said trustee, or other person acting, shall deposit in one of the banks of this city to the credit of this cause-, and file a certificate of such deposit with the clerk, and shall make report,” &c.
This portion of the decree is objected to, because it directs a sum of money to be paid to Duke out of the cash payment of the proceeds of sale before it is ascertained precisely what will be due to him, which can only be ascertained by the settlement in the latter part of the decree directed to be made of other matters of account between Hogan and Duke, independent of the said bonds. And the question is asked, How did the court arrive at the sum of nine hundred dollars as the proper sum to be paid to Duke out of the cash payment?
The court did not say, and did not intend to say, that $900 was the precise balance which would be due by Hogan to Duke on account of the bonds, but only that at least as much as that amount would be due, even after deducting any balance which might be found due by Duke to Hogan on the settlement of the' account directed to be settled in the latter part of the decree. This estimate of $900 leaves two or three hundred dollars of the cash payment to meet the possible balance due to Hogan on that account. I think this was an ample provision for such a contingency. But if no provision at all had been made for it, Hogan would have had no good ground of complaint on that score, *261 since, according to the pleadings and the proofs in the cause, he is entitled to no credit on that account. This portion of the decree, therefore, is for the benefit, and not to the prejudice of, Hogan.
The decree then provides, that in case "White, the trustee, shall not give the security required by the decree, and proceed to act under the same within ten days from its date, the sheriff of the county, who is appointed a commissioner for the purpose, shall proceed to make the sale therein directed, and in all respects act in the premises in the place and stead of said White, trustee, in the same manner and to the same extent as therein before directed. This portion of the decree is not objected to, and seems to be unobjectionable.
Then the court decrees “that one of the commissioners take an account of any matters of indebtedness existing between the plaintiff, Hogan, and the defendant, Duke, which are referred to in the pleadings in this cause, independent of the said bonds, so as to ascertain whether the said Duke be indebted to the said Hogan on account of said matters, and the amount of ■such indebtedness, if any; and shall enquire whether said other matters have, by any agreement between the «aid parties or otherwise, any connexion with the said "bond specified in said deed; and shall also state an account, showing what may appear to be due to the' said Duke on said bonds, after the payment to him of the said sum of $900,” as therein before directed; “all which accounts and enquiries the said 'commissioner shall staté and make report to the court,” &c.
Ho objection is made to this portion of the decree; hut it is contended by the counsel of Hogan that the accounts thereby directed should be taken before any sale of the property is made, and not after such sale. The answer to this view has already, in effect, been made, that there is nothing in the pleadings and proofs which requires a settlement of these accounts; and the *262 portion of the decree which directs such a settlement,, even though it he made after the sale, is for the benefit,, and not to the prejudice of, Hogan.
The decree concludes by reserving, until the coming in of the report, all questions in the cause not covered by the decree.
Before I close my opinion in this case, I suppose I' ought to notice what was said in the argument as to the said bonds being payable in gold. One of the counsel of Hogan argued that the bonds were probably not so-payable; and that, for that reason, the one which has been discharged has not been surrendered, and they were not exhibited with the answer nor filed in the cause by Duke. I do not think there is any just foundation for this argument. The deed of trust speaks a plain -language on this subject. It states that the two-bonds are “payable in gold coin, as follows, to wit: one bond payable in gold on the 1st day of March, 1867; one other bond payable in gold on the 1st day of March,, 1868.” It is not pretended that there was any fraud in. procuring this deed, or any mistake in its execution; nor is there any complaint made of it in the bill in this-respect. On the contrary, the bill alleges that the first payment of $2,000, for the land bought by Hogan of" Duke, was made in gold; though the answer denies that the said payment was made in gold, and avers that it. was made in Hnited States currency. But the answer-avers that the two bonds for the deferred payments, were payable in gold: and the deed of trust executed and acknowledged by Hogan fully sustains the answer-in this respect. It seems, therefore, that these bonds-are payable in gold; and that payment in gold might-have been exacted1 by-the-'creditor. Instead of that,, however, he has received in currency all the payments, which have been made on account of the purchase money of the land, and expects to receive, and is willing to receive in currency, the balance due him on that. *263 account, as Ms counsel announced in tlie argument. If tlie decree liad expressly directed the balance to be paid in gold, I do not see how it could have been considered erroneous on that ground. But it says nothing about gold, and all the other payments having been made and received in currency, the manifest intention of the creditor was to receive the balance in currency. In this view of the case, the decree is palpably for the benefit of Hogan.
At all events, I see no error in it to his prejudice, and am for afiirming it.
The other judges concurred in the opinion of Moncure P.
Decree affirmed.